Argued and submitted January 26, 1983, affirmed May 9, reconsideration denied June 29, petition for review allowed August 21, 1984 (297 Or 601)
See 299 Or 38, 699 P2d 183 (1985)

KESSLER,
*Respondent - Cross-Appellant,*

*v.*

WEIGANDT,
*Defendant,*
UNITED SERVICES AUTOMOBILE ASSOCIATION,
*Appellant - Cross-Respondent.*

(A8010-05643; CA A24652)

685 P2d 425

J. P. Graff, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Ben C. Fetherston, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were John J. Haugh, P. C., and John J. Haugh, Portland.

J. Michael Alexander and Brown, Burt, Swanson, Lathen & Alexander, Salem, filed a brief amicus curiae for Oregon Trial Lawyers Association.

David C. Landis, Portland, filed a brief amicus curiae for Oregon Association of Defense Counsel.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a personal injury case in which plaintiff, the victim of an automobile accident, and a liability insurance company dispute whether and to what extent the company, in paying a settlement to plaintiff, may offset either (1) the amount it has already advanced to plaintiff or (2) the amount it has reimbursed plaintiff's own insurer for personal injury protection (PIP) benefits. The trial court held that the advances could be offset, but the PIP reimbursement could not. Both parties appeal. We affirm.

Plaintiff was seriously injured when his car collided with one driven by defendant Weigandt. Plaintiff received personal injury protection (PIP) benefits of $11,931.15 from Fireman's Fund, his insurance company. He received an additional $8,683.84 from defendant United Services Automobile Association (USAA), Weigandt's liability insurer, as advance payments under ORS 18.500 *et seq.* Both the PIP benefits and the advance payments were for his medical expenses and lost wages. Fireman's Fund demanded reimbursement of its PIP payments from USAA pursuant to ORS 743.825(1); USAA concedes its liability for the reimbursement. Plaintiff sued Weigandt for his damages, including the medical expenses and lost wages covered by the payments and substantial general damages. The parties ultimately agreed to settle the case for USAA's policy limits of $100,000, but they were unable to agree whether USAA's advance payments to plaintiff or its PIP reimbursement liability to Fireman's Fund apply to reduce those policy limits. USAA therefore paid plaintiff $79,385.01, the amount of its liability limits less the disputed amounts, and USAA and plaintiff stipulated that the court could decide USAA's liability for the rest. Plaintiff accepted the payment and the stipulation as a satisfaction of his claim against Weigandt. From the stipulation it appears that plaintiff's general damages alone are at least equal to USAA's policy limits. The trial court held that USAA was entitled to offset the advance payments against its policy limits but that it could not do so with the PIP reimbursement. After the court ruled, USAA was added as a defendant. It appeals the denial of the offset for the PIP reimbursement; plaintiff cross-appeals the granting of the offset for the advance payments.

While the two issues presented by this case are straightforward, the statutory scheme under which they must

be resolved is not. We turn first to examine that scheme. There are three ways by which a PIP insurer can recover its PIP payments from the negligent party or the negligent party's insurer: interinsurer reimbursement under ORS 743.825;[1] a lien under ORS 743.828;[2] and subrogation under

---

[1]ORS 743.825 provides:

"(1) Every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer, or for whom benefits have been furnished by an authorized health insurer, shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement, has not given notice as provided in ORS 743.828 that it elects recovery by lien in accordance with that section and is entitled to reimbursement under this section by the terms of its policy.

"(2) In calculating such reimbursement, the amount of benefits so furnished shall be diminished in proportion to the amount of negligence attributable to the person for whom benefits have been so furnished, and the reimbursement shall not exceed the amount of damages legally recovered by him.

"(3) Disputes between insurers as to such issues of liability and the amount of reimbursement required by this section shall be decided by arbitration.

"(4) Findings and awards made in such an arbitration proceeding are not admissible in any action at law or suit in equity."

We have decided that these provisions apply when the injured person and the negligent driver are both insured by the same company as well as when they are insured by different companies. *See State Farm Mut. Auto. Ins. v. Sommerholder,* 65 Or App 449, 671 P2d 1194 (1983).

[2]ORS 743.828 provides:

"(1) When an authorized motor vehicle liability insurer has furnished personal injury protection benefits, or an authorized health insurer has furnished benefits, for a person injured in a motor vehicle accident, if such injured person makes claim, or institutes legal action, for damages for such injuries against any person, such injured person shall give notice of such claim or legal action to the insurer by personal service or by registered or certified mail. Service of a copy of the summons and complaint or copy of other process served in connection with such a legal action shall be sufficient notice to the insurer, in which case a return showing service of such notice shall be filed with the clerk of the court but shall not be a part of the record except to give notice.

"(2) The insurer may elect to seek reimbursement as provided in this section for benefits it has so furnished, out of any recovery under such claim or legal action, if the insurer has not been a party to an interinsurer reimbursement proceeding with respect to such benefits under ORS 743.825 and is entitled by the terms of its policy to the benefit of this section. The insurer shall give written notice of such election within 30 days from the receipt of notice or knowledge of such claim or legal action to the person making claim or instituting legal action and to the person against whom claim is made or legal action instituted, by personal service or by registered or certified mail. In the case of a legal action, a return showing service of such notice of election shall be filed with the clerk of the

ORS 743.830.[3] *See State Farm Mutual Automobile Insurance Company v. Sommerholder, supra,* n 1. Both the lien and

court but shall not be a part of the record except to give notice to the claimant and the defendant of the lien of the insurer.

"(3) If the insurer so serves such written notice of election and, where applicable, such return is so filed:

"(a) The insurer has a lien against such cause of action for benefits it has so furnished less the proportion, not to exceed 100 percent, of expenses, costs and attorney fees incurred by the injured person in connection with the recovery that the amount of the lien before such reduction bears to the amount of the recovery.

"(b) The injured person shall include as damages in such claim or legal action the benefits so furnished by the insurer.

"(c) In the case of a legal action, the action shall be taken in the name of the injured person.

"(4) As used in this section, 'makes claim' or 'claim' refers to a written demand made and delivered for a specific amount of damages and which meets other requirements reasonably established by the commissioner's rule."

[3]ORS 743.830 provides:

"If a motor vehicle liability insurer has furnished personal injury protection benefits, or a health insurer has furnished benefits, for a person injured in a motor vehicle accident, and the interinsurer reimbursement benefit of ORS 743.825 is not available under the terms of that section, and the insurer has not elected recovery by lien as provided in ORS 743.828, and is entitled by the terms of its policy to the benefit of this section:

"(1) The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident, to the extent of such benefits furnished by the insurer less the insurer's share of expenses, costs and attorney fees incurred by the injured person in connection with such recovery.

"(2) The injured person shall hold in trust for the benefit of the insurer all such rights of recovery which he has, but only to the extent of such benefits furnished.

"(3) The injured person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, such rights.

"(4) If requested in writing by the insurer, the injured person shall take, through any representative not in conflict in interest with him designated by the insurer, such action as may be necessary or appropriate to recover such benefits furnished as damages from such responsible person, such action to be taken in the name of the injured person, but only to the extent of the benefits furnished by the insurer. In the event of a recovery, the insurer shall also be reimbursed out of such recovery for the injured person's share of expenses, costs and attorney fees incurred by the insurer in connection with the recovery.

subrogation statutes specifically provide for the PIP insurer to recover its payments from either a settlement or a judgment and, under both, the liability insurer will pay no more than its policy limits. ORS 743.825, in contrast, has no provision covering these subjects, and ORS 18.510,[4] which allows a liability insurer to apply its PIP reimbursement to reduce a

---

"(5) In calculating respective shares of expenses, costs and attorney fees under this section, the basis of allocation shall be the respective proportions borne to the total recovery by:

"(a) Such benefits furnished by the insurer; and

"(b) The total recovery less (a).

"(6) The injured person shall execute and deliver to the insurer such instruments and papers as may be appropriate to secure the rights and obligations of the insurer and him as established by this section.

"(7) Any provisions in a motor vehicle liability insurance policy or health insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section."

[4]ORS 18.510 provides:

"(1) If judgment is entered against a party on whose behalf an advance payment referred to in ORS 18.520 or 18.530 has been made and in favor of a party for whose benefit any such advance payment has been received, the amount of the judgment shall be reduced by the amount of any such payments in the manner provided in subsection (3) of this section. However, nothing in ORS 12.155, 18.520, 18.530 and this section authorizes the person making such payments to recover such advance payment if no damages are awarded or to recover any amount by which the advance payment exceeds the award of damages.

"(2) If judgment is entered against a party who is insured under a policy of liability insurance against such judgment and in favor of a party who has received benefits that have been the basis for a reimbursement payment by such insurer under ORS 743.825, the amount of the judgment shall be reduced by reason of such benefits in the manner provided in subsection (3) of this section.

"(3)(a) The amount of any advance payment referred to in subsection (1) of this section may be submitted by the party making the payment, in the manner provided in ORCP 68 C.(4) for the submission of disbursements.

"(b) The amount of any benefits referred to in subsection (2) of this section, diminished in proportion to the amount of negligence attributable to the party in favor of whom the judgment was entered and diminished to an amount no greater than the reimbursement payment made by the insurer under ORS 743.825, may be submitted by the insurer which has made the reimbursement payment, in the manner provided in ORCP 68 C.(4) for the submission of disbursements.

"(c) Unless timely objections are filed as provided in ORCP 68 C.(4), the court clerk shall apply the amounts claimed pursuant to this subsection in partial satisfaction of the judgment. Such partial satisfaction shall be allowed without regard to whether the party claiming the reduction is otherwise entitled to costs and disbursements in the action."

*judgment* entered against its insured, does not mention a settlement.

■ USAA and *amicus* Oregon Association of Defense Counsel argue that it is implicit in the legislative purpose and the statutory scheme that a liability insurer's PIP reimbursement is within liability limits in a settlement as well as in a judgment. USAA essentially asks us to rewrite 18.510(2) to comply with this supposed legislative purpose. We decline to do so. The only legislative purpose we discern is that of preventing the injured party from receiving payments from the PIP insurer and the negligent party's insurer which together are greater than the injured party's damages. The legislature amended the PIP statutes in 1975; in the same act it amended ORS 18.510 to provide a method for applying the PIP reimbursement directly to a judgment against the insured. The change and the problems addressed were explained as follows:

> "[ORS 743.835] in the existing law was intended to prevent double recovery by the injured person from a liability insurer on his own uninsured motorist policy in addition to the PIP or health insurance benefits he received. Various problems in connection with this section are believed to be taken care of in section 8, 9 and 14 of the 1975 Act. Thus, only the case of the coexistent payments from the uninsured motorist and PIP provisions of the injured person's policy need be treated in this amended section." (Minutes, House Committee on Labor & Business Affairs, April 22, 1975, Exhibit H, page 6).

This explanation focuses entirely on preventing the injured party from receiving a double recovery. It does not claim to resolve a case, such as this one, when the total of the liability limits and the PIP payments is less than the injured party's damages and there is no danger of a double recovery.

We note that, although there is no legal basis for applying PIP reimbursement to the liability limits before a judgment, reimbursement will still as a practical matter be considered during settlement negotiations. Whether or not the legislature intended this result, it has provided a method to apply PIP reimbursement against the insurer's policy limits in a settlement context. Understanding how it did so requires a closer look at the three methods by which a PIP insurer may obtain reimbursement and at the role the liability insurer

plays in each of those methods. We first consider the lien and subrogation procedures and then examine interinsurer reimbursement. The results for all parties may vary significantly, depending on which procedure is used.

■    Under ORS 743.828, a PIP insurer may assert a lien against the injured person's recovery. If it does so, it is entitled to recover from a judgment *or* settlement in favor of the injured party the amount of its PIP payments, less its proportional share of the cost of achieving the judgment or settlement. Because of the PIP insurer's lien, there will be no double recovery; the injured party will only be reimbursed once for expenses that PIP covers. Because the PIP insurer deals only with the injured party, the liability insurer will be at no greater risk of having to pay in excess of its policy limits than in any other case. Indeed, the existence of a liability insurer is irrelevant to the lien under ORS 743.828; the lien extends to everything the injured party actually collects, whether the source is a liability insurer, the negligent party directly or both. The PIP insurer does not have any legally provided role in the settlement negotiations or the trial, nor does it need one. The injured party and the injured party's attorney have full control of the case and the insurer, through its lien, rides piggy-back—not shotgun—on their efforts.

If the PIP insurer asserts its subrogation right under ORS 743.830, the result is similar. The insurer is again entitled to the proceeds of any settlement or judgment to the extent of its PIP payments, subject to its proportional share of the cost of recovery. The injured person must also take reasonable steps to produce a recovery for the PIP insurer. The injured party will recover only once for PIP-covered losses, and the liability insurer will not normally pay beyond its policy limits.

In contrast to the foregoing procedures, direct reimbursement from the negligent driver's liability insurer as provided in ORS 743.825 follows significantly different procedures, whose differences are not limited to its effect on the liability insurer's policy limits. The injured party plays no role in this method; all disputes between the insurers, including liability and the amount of reimbursement due, are resolved by arbitration. The liability insurer's obligation is directly to the PIP insurer and is for the full amount of the PIP paid,

reduced in proportion to the injured party's fault rather than to the cost of the recovery. The provisions of ORS 18.510 prevent double recoveries: the interinsurer reimbursement, reduced in proportion to the injured party's comparative fault, is credited on a judgment against the negligent driver. The amount of reimbursement under ORS 743.825 will only coincidentally be the same as the amount the PIP insurer will recover under the other methods.[5] The statute does not explain the effect of the amount credited against the judgment on the liability insurer's policy limits. It is even possible that, in applying the statutory formula, the amount credited against the judgment will be less than the amount of the reimbursement.[6] However, the practical workings of the tort system and the wording of liability insurance policies show how insurers may achieve the results USAA hoped to achieve in this case.

USAA's policy, a typical liability insurance policy, includes a promise to pay damages for which its insured "becomes legally responsible because of an auto accident."

---

[5]The difference can best be shown by an example. Suppose the injured party received PIP payments of $5,000, was 40 percent negligent, and received a settlement of $25,000 at a cost of 30 percent of the settlement, or $7,500. If the PIP insurer asserts a lien, it will collect $3,500, representing its $5,000 PIP payments less its $1,500 share of the cost of recovery. The insurer's share of the cost of recovery is calculated as: $5,000 (lien before reduction)/ $25,000 (amount of settlement) × $7,500 (costs of the recovery) = $1,500. ORS 743.828(3)(a). The result is the same if the PIP insurer asserts its subrogation rights, although the calculation is slightly different. ORS 743.830(5). The injured party's own negligence is irrelevant under either of the options. However, if the PIP insurer in this example seeks interinsurer reimbursement, it will receive only $3,000 ($5,000 less $2,000 representing the injured party's 40 percent fault). The figures will change from case to case, but the PIP insurer will receive full reimbursement only when it uses the interinsurer method *and* the injured party is entirely without fault.

[6]This will happen in a comparative fault situation when the jury finds greater negligence by the PIP recipient than the insurers agreed on or than was found in arbitration under ORS 743.825(3). For example, if PIP payments are $5,000 and the arbitration found the injured party 10 percent negligent, the liability insurer will reimburse the PIP insurer $4,500. If the jury thereafter finds the injured party 40 percent negligent, the insurer may apply only $3,000 of its reimbursement to the judgment against its insured. We note that the parties' stipulation in this case is that Fireman's Fund has demanded reimbursement from USAA and that USAA is legally obligated to pay the demand. We do not know if the fact that USAA had not paid at the time of the stipulation reflects an industry practice to wait until the resolution of the tort case to determine the amount of the reimbursement. If it does, it may be an indication that insurers are aware of the potential problem with the statutes and have taken informal steps to avoid it.

The insured's legal responsibility, of course, cannot be determined until a judgment is entered or there is a binding settlement. Thus, when the liability insurer reimburses the PIP insurer before a judgment or settlement, it is not paying anything under the policy. Rather, it is discharging a direct obligation which ORS 743.825 places on the liability insurer; the *company,* not the insured, is legally responsible for the amount paid. After the insured's legal responsibility is determined by a judgment, the company, by complying with the requirements of ORS 18.510, may use its PIP reimbursement payment to reduce its insured's liability. At that time, the insured receives a benefit from the PIP payments, because they then reduce a liability for which the insured is legally responsible. USAA will have paid under the policy and, thus, be entitled to a reduction of its policy limits corresponding to the amount credited on the judgment.[7]

There is no need for a direct credit against the policy limits during settlement negotiations, and the legislature did not need to provide one. Parties negotiating a settlement do so with an eye to what they could gain from a trial. If the plaintiff knows that the maximum the insurer will have to pay after a judgment is its policy limits less a credit for its PIP reimbursement, the plaintiff will necessarily lower its sights by what it expects the amount of the credit to be, and the insurer will likewise treat its limits for settlement purposes as being reduced by the amount it expects the credit to be.[8] The reason for the differences between this situation and the lien/subrogation situation is that, in the latter, the PIP insurer must rely on the injured party's success in the tort system for its reimbursement and is unable to deal with the liability insurer

---

[7]In the unusual case where the credit against the judgment is less than the amount of the reimbursement, only the amount credited against the judgment is also credited against the policy limits, because the company has reduced its insured's liability only by that amount. *See* n 6, *supra.*

[8]While the amount that would be credited against a judgment may be unclear in comparative fault cases, that uncertainty is no greater than the uncertainty involved in many of the other factors the parties normally consider in settling personal injury actions. The legislature, consciously or unconsiously, left it to the parties to determine how to treat PIP reimbursement, but it created a context in which they know that part or all of the reimbursement will go to reduce any judgment. Because the parties to this case agree, at least for the purposes of the issues before us, that plaintiff was not negligent, they could have negotiated a settlement knowing how much the credit would be.

directly. Without a right to share in any recovery whatever, by whatever means it is obtained, the PIP insurer may be left out in the cold. In the interinsurer reimbursement situation, the PIP insurer does not need to rely on the plaintiff or on the tort system. After the reimbursement, the PIP insurer is out of the picture, and the proper treatment of the reimbursement for settlement purposes can safely be left to the injured party and the liability insurer.

■        In this case, the parties did not negotiate a settlement in the light of USAA's right to apply its payment against any judgment. Instead, they presented to the trial court the bald issue of whether USAA's reimbursement to Fireman's Fund legally reduces the policy limits without a judgment. In doing so, they asked the court to solve a matter the legislature implicitly left to them alone. Because (1) USAA's policy commits it to pay whatever its *insured* becomes liable to pay up to its policy limits, (2) before a judgment, its reimbursement of the PIP carrier is not in law a payment of the insured's liability, and (3) the amount that will be applicable to a judgment may not yet be known, USAA is not entitled to a pre-judgment credit for that reimbursement. The trial court was correct in holding that USAA owes plaintiff the amount of the PIP payments.

■■        USAA argues that this result produces a classification with no rational connection to any legitimate legislative purpose and thus violates the Equal Privileges standards of Article 1, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. USAA did not raise this argument below, and we do not consider it. We note, however, that in an area of pure economic regulation the legislature has considerable leeway and that the rationality of its actions need only be minimal. *See Williamson v. Lee Optical of Oklahoma, Inc.,* 348 US 483, 75 S Ct 461, 99 L Ed 563 (1955); *see also City of Klamath Falls v. Winters,* 289 Or 757, 619 P2d 217 (1980).

■        The issue on plaintiff's cross-appeal is whether USAA may offset the advance payments it made to plaintiff against its policy limits. Advance payments are defined as "compensation for the injury or death of a person or the injury or destruction of property prior to determination of legal

liability therefor." ORS 18.500. ORS 18.510(1) provides a method for crediting advance payments on the judgment which is similar to the method for crediting PIP reimbursement, except that there is no reduction for the injured party's comparative fault. ORS 18.510(3)(a). There is, however, a crucial distinction between the two kinds of payments. Advance payments are prepayments *on the defendant's liability,* made by the defendant's liability insurer directly to the injured party. They are voluntary on the insurer's part, and no insurer would make them if they did not apply against its policy limits. By making them, USAA has not reduced its liability or its insured's liability but has paid part of that liability before a judgment. They are thus directly applicable to its policy limits before or after judgment. The trial court was correct in denying plaintiff recovery for that amount.

Affirmed.