Argued and submitted January 18, affirmed June 27, reconsideration denied August 31, petition for review allowed September 25, 1984 (298 Or 37)
See 299 Or 119, 699 P2d 670 (1985)

**EDWARDS,**
*Appellant,*

*v.*

**BONNEVILLE AUTOMOBILE INSURANCE COMPANY,**
*Respondent.*

(A 8012 06795; CA A24511)

683 P2d 142

Gerald R. Pullen, Portland, argued the cause and filed the brief for appellant.

Thomas W. Brown, Portland, argued the cause for respondent. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is an action on an insurance contract. The issue is whether defendant, as the insurer of a vehicle in which plaintiff was a passenger, is entitled to offset personal injury protection (PIP) benefits paid to plaintiff against the bodily injury liability limits of its insured's policy. After a trial to the court, the court found in favor of defendant and dismissed plaintiff's complaint. We affirm.

Plaintiff, a passenger in a car driven by defendant's insured, was injured in a one-car accident. Plaintiff's injuries resulted in stipulated special damages of $11,000 ($5,000 medical and $6,000 lost income). Defendant paid plaintiff $15,000, the limits of its insured's liability policy. The parties reserved the right to litigate the availability of the PIP offset. Plaintiff then brought this action, claiming $11,000 special damages under the PIP provisions of the policy. Defendant answered that its PIP payments, pursuant to the terms of an endorsement to its insured's policy, were offset against the policy's liability limits. The endorsement is derived from former ORS 743.835 and provides in part:

> "Any payments made by the Company under this insurance either as benefits to or on behalf of any insured person or as reimbursement, pursuant to ORS 743.800 to 743.835 inclusive, to any other insurer or organization for benefits paid by it shall be applied in reduction of the amount of damages which, because of bodily injury sustained in the same accident, such injured person may be entitled to recover from the company or any other insurer under insurance afforded for either bodily injury liability or protection against uninsured motorists."

The dispositive issue is whether, when there is a single-vehicle accident caused by the negligence of the driver insured, and the passenger's injuries exceed the insured's bodily injury liability limits, a PIP endorsement—which offsets PIP payments against the policy's liability limits—contravenes the PIP scheme of ORS 743.800-.835.

This case is another in a series of recent cases involving the PIP statutes. In *Kessler v. Weigandt,* 68 Or App 180, 685 P2d 425 (1983), we disallowed an offset for PIP benefits paid by an insurer. That case involved a two-car collision. The at-fault party's liability insurer conceded its

liability for reimbursement to the PIP insurer for the PIP benefits that the insurer had paid to the injured party. The liability insurer, however, contended that it was entitled to offset the PIP reimbursement from the liability limits of its insured's policy. We examined the statutory scheme by which a PIP insurer can recover its PIP payments from the negligent party or the liability insurer under ORS 743.825 (interinsurer reimbursement), ORS 743.828 (lien) and ORS 743.830 (subrogation). In *Kessler,* only ORS 743.825 and ORS 18.510(2) were at issue. After reviewing those statutes, we concluded, under *Kessler's* facts, that an offset is not permitted:

> "USAA's policy, a typical liability insurance policy, includes a promise to pay damages for which its insured 'becomes legally responsible because of an auto accident.' The insured's legal responsibility, of course, cannot be determined until a judgment is entered or there is a binding settlement. Thus, when the liability insurer reimburses the PIP insurer before a judgment or settlement, it is not paying anything under the policy. Rather, it is discharging a direct obligation which ORS 743.825 places on the liability insurer; the *company,* not the insured, is legally responsible for the amount paid. After the insured's legal responsibility is determined by a judgment, the company, by complying with the requirements of ORS 18.510, may use its PIP reimbursement payment to reduce its insured's liability. * * *

> "There is no need for a direct credit against the policy limits during settlement negotiations, and the legislature did not need to provide one. Parties negotiating a settlement do so with an eye to what they could gain from a trial. If the plaintiff knows that the maximum the insurer will have to pay after a judgment is its policy limits less a credit for its PIP reimbursement, the plaintiff will necessarily lower its sights by what it expects the amount of the credit to be, and the insurer will likewise treat its limits for settlement purposes as being reduced by the amount it expects the credit to be. The reason for the differences between this situation and the lien/subrogation situation is that, in the latter, the PIP insurer must rely on the injured party's success in the tort system for its reimbursement and is unable to deal with the liability insurer directly. Without a right to share in any recovery whatever, by whatever means it is obained, the PIP insurer may be left out in the cold. In the interinsurer reimbursement situation, the PIP insurer does not need to rely on the plaintiff or on the tort system. After the reimbursement, the PIP insurer is out of the picture, and the proper treatment of the reimbursement for

settlement purposes can safely be left to the injured party and the liability insurer." 68 Or App at 188-90.

We then observed that the parties did not negotiate a settlement in the light of the liability insurer's right to apply its PIP reimbursement against any judgment, and, in summary, we stated that:

"* * * [b]ecause (1) [the liability insurer] policy commits it to pay whatever its *insured* becomes liable to pay up to its policy limits, (2) before a judgment, its reimbursement of the PIP carrier is not in law a payment of the insured's liability, and (3) the amount that will be applicable to a judgment may not yet be known, [the liability insurer] is not entitled to a pre-judgment credit for that reimbursement." 68 Or App at 190.

In *State Farm Mut. Auto. Ins. v. Sommerholder,* 65 Or App 449, 671 P2d 1194 (1984), we addressed the narrow issue of whether an insurer of both vehicles involved in a collision was an "other insurer" for the purposes of ORS 743.825(1). Citing *Koberstein v. Sierra Glass Co.,* 65 Or App 409, 671 P2d 1190 (1983), we concluded that, assuming that the provisions of ORS 743.825(1) and ORS 18.510(2) were complied with, the plaintiff was limited to the liability limits of the at-fault party's policy, reduced by the PIP benefits furnished by the insurer: "We see no principled reason why the amount defendant is entitled to receive should be increased by the amount of PIP benefits by the fortuity of the same insurers insuring both vehicles." 65 Or App at 454.

Most recently in *Staiger v. Burkhart,* 68 Or App 548, 683 P2d 1015 (1984), we analyzed the PIP scheme under facts involving a two-car collision. The plaintiffs were the passengers in the defendant insured's car. The insured's policy contained provisions similar to those in the *Kessler* policy:

"Similarly, [the liability insurer] agreed, by the terms of its policy,

" '* * * to pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of * * * bodily injury * * * sustained by any person * * *.'

"It also agreed

" '* * * to pay all reasonable medical expenses incurred within one year from the date of the accident * * * to or for any * * * person who sustains bodily injury caused by accident, while occupying * * * the owned automobile,

while being used by the named insured * * *.' " 68 Or App at 552-53.

In *Staiger,* the liability insurer did not contend that its insured's policy contained any provision which allowed it to offset PIP benefits that it had paid to the plaintiffs against the policy's liability limits. Under the terms of the policy, and in the absence of an endorsement to the policy's PIP provisions, we held, similarly as in *Kessler,* that the liability insurer was not entitled to the offset.

■ The present case is different from *Kessler* and *Sommerholder,* and similar to *Staiger,* in that the mechanics of ORS 743.825-.835 are not involved. In other words, in *Staiger,* and in the present case, the underlying actions involve plaintiffs who were passengers in the negligent drivers' cars and, in both cases, no reimbursement between insurers was involved. The crucial difference between the present case and *Staiger* is the endorsement contained in defendant's policy. Having determined that the PIP reimbursement scheme of ORS 743.825-.830 and the uninsured motorist offset of ORS 743.835 are not implicated by the facts of the present case, and that defendant insured's policy contains a PIP endorsement allowing the offset, the question becomes whether that endorsement is inconsistent with the entire PIP statutory scheme.

The practical result under the facts of the present case of requiring defendant to provide to plaintiff the $11,000 PIP coverage in addition to the $15,000 limits of defendant's insured's liability policy is to create a statutory basis for additional insurance for Oregon drivers. Plaintiffs point to nothing, either in the PIP statutes, or the legislative history, that suggests that the legislature intended to provide additional PIP coverage of an unspecified amount under every Oregon insured's liability policy.

Cases from other jurisdictions have held that an interinsurer reimbursement of PIP benefits does not reduce the policy limits in "limits" cases. Those cases are inapposite, however, because the statutes relied on are distinguishable. For example, in *Criterion Insurance Co. v. Commercial Union Assurance Co.,* 89 Misc 36, 390 NYS2d 953 (1976), the court required the at-fault party's liability carrier to reimburse the

injured party's PIP carrier. The court held that that reimbursement obligation was not altered by the liability policy's limits:

> "The petitioner's argument that this imposes on it a liability which it did not contract to assume is untenable. The object of the no-fault act was to eliminate the vast majority of auto accident negligence suits from the judicial arena and to assure prompt compensation of accident victims of substantially all of their economic loss without regard to fault." 390 NYS2d at 957.

The New York statute, however, Insurance Laws, § 674(3) provides:

> "The liability of an insurer imposed by this Section shall not affect or diminish its obligation under any policy of bodily injury liability insurance."

New York's PIP statute is a partial tort exemption scheme, which eliminates tort recovery for negligence actions causing substantial injuries but preserves claims for serious and severe injuries. N.Y. Ins. Law §§ 673-77 (McKinney 1973). Oregon's PIP statute, on the other hand, is an "add-on" statute, which preserves all tort claims. Although the objective of Oregon's PIP scheme is similar to that of New York's, the methods employed by the legislatures to achieve that result differ. *See generally* Keeton, *Compensation Systems and Utah's No Fault Statute,* 1973 Utah L. Rev 383 (1973).

■      We conclude that the policy endorsement does not contravene the PIP statutory scheme.

     Affirmed.