Andrew J. Di Paola, J.
This proceeding to stay compulsory arbitration proceedings under section 674 of the Insurance Law involves the interpretation of the statute and, if interpreted contrary to petitioner’s contentions, an attack on its constitutionality.
The facts are undisputed. On May 12, 1974 Frances Frangione was operating an automobile owned by Felix Frangione covered by a policy of insurance issued by the respondent Commercial Union Assurance Company (Commercial Union) which complied with the requirements of the Comprehensive Automobile Insurance Reparations Act (Insurance Law, art XVIII, §§ 670-677) commonly known as the New York no-fault *37 act, when there was a collision in Suffolk County between that vehicle and the automobile owned and operated by Jennie Kronske, insured by the petitioner Criterion Insurance Company of Washington, D.C. (Criterion). Criterion’s policy provided liability coverage of $10,000/$20,000 for personal injuries and $5,000 for property damage and it, too, contained provision for no-fault benefits as required by law (Insurance Law, § 672). Thus each of the operators was a "covered person” under the no-fault act (Insurance Law, § 671, subd 10).
Mrs. Frangione was seriously injured in that collision and Commercial Union has made payments to her of the first-party benefits required by its policy and the statute (Insurance Law, § 671, subds 1, 2; § 672). By May 19, 1975, such payments aggregated $35,579.16 and were continuing. No challenge is presented either to the fact, or to the necessity and propriety, of the payments. On that day Commercial Union demanded arbitration under section 674 of the Insurance Law[1] predicated on its position that Jennie Kronske was the at-fault party in causing the collision on May 12, 1974. The response was Criterion’s application to stay the arbitration proceedings.
Eleven adjournments of that application were taken mainly co await the decision of the Court of Appeals in Montgomery v Daniels (38 NY2d 41) which involved an attack on the constitutionality of article XVIII of the Insurance Law by persons injured in vehicular accidents. The legislation wans upheld by an unanimous court; and the pending application was finally presented to the Special Term on March 1, 1976. An intermediate order required the vouching in of the Attorney-General (Executive Law, § 71) and he has now by notice dated November 10, 1976, appeared herein and filed an answering affidavit and brief.
Among other claims, the petitioner urges that any interpretation of the statute which requires it to pay to Commercial *38 Union or to its insureds any sums in excess of $10,000 impairs the obligations of its contract (the liability policy) with Mrs. Kronske who only purchased limited coverage as noted, and that in any event, the statute violates its right to a jury trial of the liability issues and denies it equal protection of the laws and due process in allegedly precluding it from obtaining contribution from possible joint tort-feasors (in this case, the manufacturer of the Kronske vehicle).
In Montgomery v Daniels (38 NY2d 41, 46, supra) the court pointed out that the no-fault act was one which effected "a two-pronged, partial modification of the pre-existing system of reparation for personal injuries suffered in automobile accidents” and that "[o]ne prong deals with compensation; the other with limitation of tort actions.” In pursuit of the objective of compensation the act requires that every owner of a motor vehicle provide himself, operators, occupants and pedestrians with compensation for basic economic loss as defined in the statute, thus achieving a limited objective in that area.
In our consideration of section 674 of the Insurance Law, we are concerned with the second prong of the no-fault act which (Montgomery v Daniels, supra, p 47) "imposes two limitations on tort recovery for personal injuries, applicable, however, only to actions between 'covered persons’ (as defined in § 671, subd 10): (1) there can be no duplicate tort compensation for 'basic economic loss’ (§ 673, subd 1); and (2) damages for noneconomic loss (i.e., pain and suffering) are not recoverable in tort unless the plaintiff can establish that he has suffered a 'serious injury’ (§ 673, subd 1).”
The legislative intent is to be gathered from the language employed in the statute construed as written and given its unequivocal meaning (Flushing Nat. Bank v Municipal Assistance Corp., 40 NY2d 731; Association of Contr. Plumbers v Contracting Plumbers Assn., 302 NY 495, 500; People v Olah, 300 NY 96, 102) and the plain and clear provisions of section 674 of the Insurance Law (set forth in n 1, supra) require no interpretation (cf. Matter of Wendell v Lavin, 246 NY 115, 120).
The statutory mandate, in simple terms, is that Commercial Union having paid first-party benefits to its insured, a covered person, has the right to recover the amount of those benefits from Criterion as the insurer of another covered person "if and to the extent that such other covered person would have been liable, but for the provisions of this article [the no-fault *39 act], to pay damages in an action at law.” (Insurance Law, § 674, subd 1.) The procedure is by arbitration, the limit of recovery by the demanding insurer, is the amount of the benefits paid for economic loss as defined in the act, and the obligations of the responding insurer under any policy of bodily injury liability insurance are not affected or diminished.
This patent construction has been followed by the Department of Insurance of the State of New York. Thus in its circular letter No. 5 (1976) issued February 27, 1976, it stated: "The obligation of an insurer under Section 674 to reimburse another insurer for payments of first party benefits [basic economic loss] is not limited by the underlying limits of the at-fault owner’s liability coverage. Moreover Section 674(3) recognizes that the obligation of an insurer to reimburse another insurer pursuant to Section 674(1) does not affect or diminish the at-fault insurer’s obligation under its policy of bodily injury liability insurance * * * Section 674 provides that the obligation of the insurer of the at-fault party to settle with the insurer of the not-at-fault party is as broad as the primary obligation of the not-at-fault insurer to pay first party benefits. The obligation of the at-fault insurer to reimburse the not-at-fault insurer is not tied to the limits of the liability coverage of the at-fault party but to the liability for payment of elements of basic economic loss which the covered person would have been exposed to prior to the enactment of the no-fault law.” (See, also, 11 NYCRR Part 65.)
The petitioner’s argument that this imposes on it a liability which it did not contract to assume is untenable. The object of the no-fault act was to eliminate the vast majority of auto accident negligence suits from the judicial arena and to assure prompt compensation to accident victims of substantially all of their economic loss without regard to fault (see Governor’s Memorandum, NY Legis Ann, 1973, p 298; Montgomery v Daniels, 38 NY2d 41, 49 et seq., supra). In part this was achieved by providing for intercompany arbitration of loss reallocations.[2] In writing insurance in this State, Criterion *40 necessarily assumed the obligations imposed by the statute on those so engaged in that type of business (see Insurance Law, §§ 143, 167, 672; Bersani v General Acc. Fire Corp., 36 NY2d 457, 460; State Farm Mut. Ins. Co. v Westlake, 35 NY2d 587, 592-593; Antinora v Nationwide Life Ins. Co., 76 Misc 2d 599) and the requirement for such assumption may constitutionally be made (see Hoopeston Co. v Cullen, 318 US 313; Merchants Mut. Auto. Liab. Ins. Co. v Smart, 267 US 126).
Given this interpretation of section 674 of the no-fault act, the constitutional grounds urged by the petitioner become relevant. In this connection, not only is the respondent’s and the Attorney-General’s argument of validity bolstered by the broad sweep of Montgomery v Daniels (38 NY2d 41, 45, supra) where the court said: "We hold that the New York no-fault automobile accident compensation law is not unconstitutional”[3] but also by the established rule that there is an exceedingly strong presumption of constitutionality in essence requiring demonstration of unconstitutionality beyond a reasonable doubt (Wasmuth v Allen, 14 NY2d 391, 397; Wiggins v Town of Somers, 4 NY2d 215, 218; Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 415).
What is settled by Montgomery is that Mrs. Frangione’s tort right of recovery for her economic loss for which she has been and may be continuing to be reimbursed has been abolished to the extent of the first $50,000 in amount thereof (Montgomery v Daniels, supra, pp 53-59). In its place has been substituted (1) her right to first-party benefits as defined by the no-fault act, and (2) insofar as tort features are concerned, the creation of a new statutory remedy of arbitration in favor of her carrier, the insurer paying the first-party benefits, against the carrier insuring Jennie Kronske to the extent that Mrs. Kronske (not her carrier) would have been liable but for the no-fault act, to pay damages in an action at law. Since Mrs. Frangione’s common-law right of action has been abrogated in certain respects, her carrier can have no greater right to a common-law action in those respects than she has. Its only *41 redress is the arbitral process newly created by the Legislature. There is nothing to which a right of trial by jury in connection with that process can attach (see Montgomery v Daniels, supra, pp 66-67).
In this context, section 675 which provides optional arbitration for claimant versus primary carrier disputes has been construed to be constitutional against a claim that the carrier (in that case a self-insured corporation subject to the statute [Insurance Law, § 671, subd 7]) was being unconstitutionally deprived of its right to a jury trial (Matter of Green Bus Lines v Bailey, 50 AD2d 924;[4] and see Matter of Nassau Ins. Co. v McMorris, 53 AD2d 694).
Nor does petitioner’s argument invoking the equal protection clause have any greater merit. Its first assumption that there is a difference between insured persons covered by an insurance carrier and self-insurers is misplaced since the word "insurer” as used in section 674 includes an instirance company or self-insurer which provides financial security required by article 6 or 8 of the Vehicle and Traffic Law (Insurance Law, § 671, subd 7). The short answer to any of the equal protection claims is amply set forth in Montgomery v Daniels (38 NY2d 41, 59 et seq., supra).
Nor does the claim of deprivation of due process withstand closer scrutiny. If, as it claims, the petitioner has a products liability cause of action against the manufacturer of the Kronske vehicle, it is not deprived thereof by the statute. And insofar as the arbitration features are concerned, any determination in arbitration would still be subject to the court’s powers (Mount St. Mary’s Hosp. v Catherwood, 26 NY2d 493, 502 et seq.; Matter of Nassau Ins. Co. v McMorris, 53 AD2d 694, supra).
No-fault acts exist in one form or another in a number of jurisdictions (16 as of Jan. 1, 1976). There is a Uniform Motor Vehicle Accident Reparations Act (13 Uniform Laws Ann, p 349 et seq. and supp) but not one of the States that have adopted no-fault legislation has adopted the uniform act. Subrogation and reimbursement features of the acts in force vary (Am Jur 2d, New Topic Service, No-Fault Insurance, § 9). *42 Such decisions as have been rendered in foreign jurisdictions depend upon their own statutes and none of these contain provisions completely analogous to section 674 of the New York Insurance Law. Within this category falls Pennsylvania Mfrs’. Assn. Ins. Co. v Government Employees Ins. Co. (136 NJ Super 491) relied upon by petitioner where the statute involved (NJ Stat, § 39:6A-9) did not contain any analogue to subdivision 3 of section 674.
It follows that the petition must be dismissed and a short-form judgment in conformity herewith has been signed.

. "§ 674. Settlement between insurers.
"1. Any insurer liable for the payment of first party benefits to or on behalf of a covered person shall have the right to recover the amount of such benefits so paid from the insurer of any other covered person if and to the extent that such other covered person would have been liable, but for the provisions of this article, to pay damages in an action at law.
"2. The sole remedy of any insurer to recover on a claim arising under subdivision one of this section, shall be the submission of the controversy to mandatory arbitration pursuant to procedures to be promulgated or approved by the superintendent.
"3. The liability of an insurer imposed by this section shall not affect or diminish its obligations under any policy of bodily injury liability insurance.”

. Cf. Ghiardi and Kircher, The Uniform Motor Vehicle Accident Reparation Act: An Analysis and Critique (40 Ins Counsel J 87, 98): "We believe that reallocation of loss should be based upon fault and not physics. We believe that any loss reallocation procedure should provide that an insurer, through an inter-company arbitration program, will be able to recover the benefits paid to its insured from the insurer of the driver whose fault caused the accident. This would still allow accident victims to recover first party benefits from their own insurers without regard to fault. The *40 insurers could arbitrate the reallocation based upon fault without the use of court facilities and judicial time.”

. This said, there still remain the contentions made by petitioner with respect to section 674 since Montgomery essentially involved an attack by injured plaintiffs asserting a personal right to jury trial of their personal injury causes of action and an unconstitutional classification of such plaintiffs in the statutory limitation of their tort recovery for noneconomic loss. This did not necessarily involve any interpretation of section 674.

. The court noted "[W]e have considered them [constitutional issues] on this appeal and find them to be of no substantial merit (Montgomery v Daniels, 38 NY2d 41)”. The opinion does not indicate but the briefs on appeal do, that the constitutional issues involved were the equal protection clause of the Fourteenth Amendment and the right to jury trials provided by New York State Constitution (art I, § 2).