**OHIO SECURITY INSURANCE COMPANY, Appellant,**

v.

**Francis W. DRURY and Insurance Company of North America, Appellee.**

**MOTORIST MUTUAL INSURANCE COMPANY, Appellant,**

v.

**EQUITY MUTUAL INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

April 6, 1979.

Discretionary Review Denied
June 26, 1979.

Lee E. Sitlinger, John L. Bennett, Hogan, Taylor, Denzer & Bennett, Louisville, for appellant, Ohio Sec. Ins. Co.

William A. Miller, Louisville, John H. Rompf, Jr., White, McCann & Stewart, Winchester, for appellant, Motorist Mut. Ins. Co.

Kenneth L. Anderson, Woodward, Hobson & Fulton, Louisville, for appellee, Ins. Co. of North America.

Elwood Rosenbaum, Natalie S. Wilson, Eblem, Milner, Rosenbaum & Wilson, Lexington, for appellee, Equity Mut. Ins. Co.

Kevin A. George, Eli J. George, Jr., Louisville, for appellee, Francis W. Drury.

Before HAYES, REYNOLDS and WILHOIT, JJ.

HAYES, Judge.

These two cases have been heard together by this court because they have a common issue, that being, whether a reparations obligor which has paid basic reparations benefits, or personal injury protection [hereinafter called PIP] to the party not-at-fault in the automobile accident is entitled by KRS 304.39–070 to a recovery of those benefits from the liability insurer of the tort-feasor. The trial courts, in both cases, answered affirmatively, and so do we.

In the *Ohio Security Insurance Company* case appellee Drury's automobile was hit from the rear by an auto driven by Wessel. Drury was insured by appellee, Insurance Company of North America [hereinafter called INA], the basic reparations obligor. Wessel was insured by Ohio Security under a policy which provided $10,000.00 coverage for bodily injury caused by the negligence of Wessel.

Drury collected the maximum basic reparation benefits ($10,000.00) under the policy he had with INA and he then filed a cause of action against Wessel for $60,000.00 for injuries suffered in the accident.

Ohio Security offered to settle out of court with Drury for the Wessel policy limits of $10,000.00. INA intervened under authority of KRS 304.39–070(3) and asked for recovery from Ohio Security of the $10,000.00 INA had paid Drury in PIP benefits.

The trial court, in a thorough and well-reasoned opinion, determined that Ohio Security owed Drury the $10,000.00 limits (it was stipulated that Drury's case was worth far in excess of the $10,000.00 limits) under Wessel's liability policy, and Ohio Security owed INA the $10,000.00 basic reparation benefits INA had previously paid to Drury. In effect Ohio Security was required to pay out $20,000.00 on a policy with a limit of only $10,000.00.

In the *Motorist Mutual Insurance Company* case, the automobile of Lillian Hatton was struck from the rear by a vehicle driven by Billie Farris, against whom Hatton subsequently filed a law suit demanding $146,500.00 for the permanent injuries she sustained in the accident. Farris was insured for liability by Motorist Mutual to a $25,000.00 limit. Hatton was insured by Equity Mutual Insurance Company for basic reparation benefits of $10,000.00.

Equity Mutual intervened in the suit by Hatton against Farris and asked that the benefits it had paid Hatton be reimbursed by Motorist Mutual. Prior to trial, the Hatton claim against Farris was settled for $23,000.00. The trial court thereafter signed a judgment ordering Motorist Mutual to pay Equity Mutual the $10,000.00 Equity Mutual had paid to Hatton as basic reparation benefits. In effect, Motorist Mutual paid out $33,000.00 on a policy with a $25,000.00 exposure.

It is not disputed by any of the parties in either the *Ohio Security* case or the *Motorist Mutual* case that the clear language of the particular insurance policy involved limits the total bodily injury liability to $10,000.00 for Ohio Security and $25,000.00 for Motorist Mutual. Notwithstanding that policy language, the question is whether the Kentucky Motor Vehicle Reparations Act (No-Fault), KRS 304, Subtitle 39, requires the insurance liability carrier to satisfy the claim of an injured claimant against its insured tort-feasor up to the maximum limits of its policy and in addition satisfy the claim of the injured claimant's reparation obligor in the amount it had paid in basic reparation benefits to its insured.

The particular statute involved here is KRS 304.39–070, in effect on the date of the accident. It reads as follows:

"Secured person"—Obligor's rights to recovery.

(1) "Secured Person" means the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant.

(2) A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or

organization other than a secured person.

(3) A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39–140(3).

KRS 304.39–070 then goes on to establish the two ways in which the reparations obligor may assert its claim.

Section (4) of this statute was enacted in 1978 and became effective June 17, 1978, which date was long after the accident in both cases and after the judgment was entered. Section (4) has no application to the instant case. KRS 446.080(3).

This appears to be a case of first impression in Kentucky. The parties cite neither Kentucky nor foreign cases on point. We have been unable to locate any, except possibly the case of *Criterion Insurance Company of Washington D.C. v. Commercial Union Insurance Company*, 89 Misc.2d 36, 390 N.Y.S.2d 953 (1976). Although the New York Law, found in N.Y.Ins.L. Art. XVIII, §§ 670–678 and in particular § 674,[1] is somewhat different from KRS 304.39–070 in wording, its effect is nearly the same.

In *Criterion, supra*, X was operating an automobile insured by Commercial Union under the New York No-Fault Act. X's auto collided with Y's auto which was insured by Criterion under the New York No-Fault Act. Thus both parties were "covered persons" under the New York Law. X was seriously injured, and he had received first party benefits (PIP) from Commercial in the amount of $35,579.00. Commercial demanded arbitration and reimbursement from Criterion of the PIP benefits Commercial had paid to X. Criterion, which had only a $10,000.00 bodily injury liability coverage on Y, argued that

any interpretation of the statute (Section 674) which required it to pay any sums in excess of the $10,000.00 limits impairs the obligation of its contract with Y, who only purchased and paid for the limited coverage as noted.

The New York court held that the obligation of an insurer under Section 674 to reimburse another insurer for payments of first party benefits is not limited by the underlying limits of the *at fault* owner's liability coverage. The mandate of the New York statute is clear and Criterion necessarily assumed the obligation imposed by the statute by writing insurance in New York.

Both Ohio Security and Motorist Mutual contend that Section (3) is a protective statute for secured persons in that the secured person is protected from claims by an injured claimant's reparation obligor where the secured person's bodily injury policy limits are less than sufficient to satisfy the common law claim of the injured claimant and the subrogation claim of the reparation obligor.

 The trial court, in *Ohio Security* determined that KRS 304.39–070(3) creates a separate right of recovery in the basic reparation obligor, and the purpose of the statute is to allocate, still under a fault concept, the ultimate responsibility for the benefits paid to injured parties. With this reasoning we agree.

 Motorist Mutual urges that since it has paid $23,000.00 out of its $25,000.00 limits on bodily injury liability coverage, Equity is entitled to the remaining $2,000.00 and no more, for there is no policy provision from which to pay the additional $8,000.00 Equity is demanding. The answer to that is that, Motorist Mutual, by writing insurance in Kentucky, makes itself amendable to the provisions of the Kentucky Law and necessarily assumes the obligations of KRS 304.39–070(3), notwithstanding the

1. N.Y.Ins.L., Art. XVIII, § 674, Settlement between insurers: Any insurer liable for the payment of first party benefits to or on behalf of a covered person shall have the right to recover the amount of such benefits so paid from the insurer of any other covered person if and to the extent that such other covered person would have been liable, but for the provisions of this article, to pay damages in an action at law.

provisions of its contract with Farris. Equity's claim against Motorist Mutual is not entirely one of subrogation, but rather is reimbursement by virtue of the provision of the statute, or by operation of law.

Motorist Mutual cites *Ammons v. Winklepleck*, Ky.App., 570 S.W.2d 287 (1978), and *Pennsylvania Manufacturer's Association Insurance Co. v. Government Employees Insurance Co.*, 136 N.J.Super. 491, 347 A.2d 5 (1975), affd. 72 N.J. 348, 370 A.2d 855 (1977). Neither case is applicable to the instant cases.

The sole question in *Winklepleck, supra*, was whether the insurance company was entitled to a set off or credit on its bodily injury liability coverage for all amounts paid to the injured claimant under the PIP coverage. There was only one basic reparation obligor involved. KRS 304.39–070 had no application.

In *Government Employees Insurance Co., supra*, the New Jersey statute, N.J.S.A. 39:6A–9, read thus:

> Any insurer paying benefits in accordance with the provisions of section 4 and section 10, personal injury protection [benefits], regardless of fault shall be subrogated to the right of any party to whom it makes such payments, to the extent of such payments. Such subrogat[ion] insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person (not insured).

The basic reparation obligor, Pennsylvania Insurance Company, had paid PIP benefits to the injured claimant in the amount of over $6,000.00. Government Employees Insurance Company, [hereinafter called G.E.I.C.] the tort-feasor's carrier had only a $20,000.00 limits liability policy with the tort-feasor. Pennsylvania Insurance sought a declaratory judgment to determine its subrogation rights against G.E.I.C.

In this case of first impression in New Jersey upon the issues of the impact of the PIP provisions of the No-Fault Law upon the responsibility of a tort-feasor's insurance carrier for payment of a PIP subrogation claim, the New Jersey court held that the involvement of G.E.I.C. in the claim of the injured passenger, or the carrier subrogated to that passenger, is measured exclusively by its undertaking within the ambit of liability features of its policy. There was nothing written into the No-Fault Law that expanded that liability with respect to third party claims.

■ Motorist Mutual urges us to adopt the holding as applicable to its case against Equity. But for Section (3) of KRS 314.39–070, we might agree. Based solely upon the theory of subrogation, Hatton, Equity's insured, has no rights against Farris, Motorist's insured, because Farris' tort liability for basic reparation benefits has been abolished to the extent paid. *State Farm Mutual Automobile Insurance Co. v. Fletcher*, Ky., 578 S.W.2d 41 (1979). KRS 304.39–060(2)(a). Therefore Equity would have no claim against Motorists. However, by operation of law, through Section (3) of KRS 304.39–070, Equity is given a right of recoupment of its loss against Motorists. New Jersey does not have such a provision in its No-Fault Law. Therefore, *Pennsylvania Manufacturer's Association Insurance Co. v. Government Employees Insurance Co., supra*, is not applicable to the instant cases.

As a side issue, Motorist Mutual complains that the trial court erred when it failed to permit it to file an amended answer to the intervening complaint filed by Equity. When Equity first intervened, it asked for only $5,000.00 in damages because that sum was all it had expended at the time. At the time of trial it had expended an additional amount equal to its policy limits of $10,000.00. As we review the record on this issue, the amended intervening complaint did not change or present any new issue in the case, and was by agreement of the parties and in accordance with CR 15.01. The trial court also correctly denied Motorist Mutual's amended answer

to the amended intervening complaint, as the answer was tendered ten days after the trial of this matter. In any case the amended answer to the intervening complaint and the amended answer to the amended intervening complaint both set up Motorist Mutual's policy provisions as a defense. We, by this decision, have determined the provisions in Motorist Mutual's policy have no real bearing on the rights of Equity granted by virtue of KRS 304.39–070(3).

The judgments in both cases are affirmed.

All concur.