260 N.J. Super. 380 (1992)
616 A.2d 963
THE HANOVER INSURANCE COMPANY, AS SERVICING CARRIER FOR NEW JERSEY FULL AUTOMOBILE UNDERWRITING ASSOCIATION, AND KRISHNADAS MEHTA, PLAINTIFFS,
v.
LESTER LEWIS AND THE HARTFORD INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided August 31, 1992.
*381 Harold Seide, for plaintiffs (Keane, Brady, & Burns, attorneys).
Mary Breslin, for defendants (Purcell, Ries, Shannon, Mulcahy & O'Neill, attorneys).
MENZA, J.S.C.
Plaintiffs move for summary judgment.
The question presented in this case is whether personal injury protection (PIP) reimbursement recovery is limited to the amount of the tortfeasor's liability policy.
The plaintiff Krishnadas Mehta (Mehta) was injured as a result of an automobile accident involving the defendant Lester Lewis (Lewis), who was operating a commercial vehicle at the time.
*382 The plaintiff, Hanover Insurance Company (Hanover), insured the Mehta vehicle.
The defendant, Hartford Insurance Company (Hartford), insured the Lewis vehicle and has paid to the plaintiff the sum of $35,000.00  the full amount of Lewis liability policy. Since the Lewis vehicle was a commercial vehicle, it did not have PIP coverage.
Hanover now seeks reimbursement from Hartford, Lewis' insurance company[1], for the PIP benefits that it paid to Mehta ($13,702.87), pursuant to N.J.S.A. 39:6A-9.1, Recovery of Personal Injury Protection Benefits from Tortfeasors.
Hartford objects, contending that it has paid to Mehta the limits of its liability policy and it is therefore not liable for any further payments. Hartford's policy provides:
Coverage
We will pay all sums an "insured" legally must pay as damage because of "bodily injury" or "property damage" to which this insurance applied, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
Limit of Insurance
Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all coverage resulting from any one "accident" is the unit of insurance for liability coverage shown in the declarations.
The original reimbursement statute, N.J.S.A. 39:6A-9, was stated in terms of subrogation and provided:
Any insurer paying benefits in accordance with the provisions of section 4 and section 10, personal injury protection coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. The *383 exemption from tort liability provided in section 8 does not apply to the insurers' subrogation rights. On and after 2 years from the effective date of this act the provisions of this section shall be inoperative. (emphasis added).
In the case of Pa. Mfgrs. Assn. Ins. Co. v. Govt. Emp. Ins. Co., 136 N.J. Super. 491, 347 A.2d 5 (App.Div. 1975), the court concluded that the statute, in providing for subrogation, granted to the insurer only those rights which the PIP recipient would have had against the tortfeasor's insurer. The court said:
We find no indication in the No Fault Law evidencing a legislative intent to tamper with the existing law of normal subrogation.... The rights of ... [the plaintiff] ... are therefore controlled by existing subrogation principles, with the right and quantum of recovery equated with that of the injured person to whom the PIP payments were made.
........
Since under the PIP provision of the No Fault Law she is reimbursed on a first-party basis by her host's insurance carrier, she is required to forego her right to recover for these reimbursed expenses and Pennsylvania is subrogated to recover from GEICO in an amount limited by the coverage of the liability feature of its policy. (Id. at 498, 347 A.2d 5).
The statute expired on January 1, 1975, two years after it was enacted.
In 1981, after the expiration of the first statute and prior to the enactment of the current statute, the Supreme Court, in the case of Aetna Ins. Co. v. Gilchrist Bros. Inc., 85 N.J. 550, 428 A.2d 1254 (1981), held that an insurer seeking subrogation had only those rights which its insured had. It stated:
The underpinning of subrogation is its derivative nature. The insurer obtains only the right of the insured against the tortfeasor subject to defenses of the wrongdoer against the insured ...
........
Therefore, the rights of the insured beneficiary, the subrogor, become the rights of the subrogated insurer. No additional rights are created. No new cause of action comes into existence ...
........
The issue then is what rights ... [the decedent] .. . had which would have entitled him to recover from... [defendants] ... those expenses incurred as a result of the automobile accident and paid as part of the PIP coverage under the Aetna policy. The answer is none. It is none because the New Jersey *384 Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., which mandates that every automobile liability insurance policy must provide PIP coverage, has eliminated the ability of the insured in an action in this State to recover damages from the tortfeasor for the amounts collectible or paid under PIP ... (Id. at 560-562 [428 A.2d 1254]).
........
In the absence of a clearly expressed legislative intent to the contrary, we regard the language in . .. [N.J.S.A. 39:6A-12] ... as conclusive, irrespective of the nature of the tortfeasor's insurance coverage. The rights of plaintiff's insurance carrier as subrogee cannot exceed those of its insured. Since the injured plaintiff could not recover PIP damages from the tortfeasor, neither could plaintiff's insurance carrier.
........
The arguments marshalled by the dissent should more properly be directed to the Legislature. The Legislature decided injured plaintiffs may not recover PIP payments from the tortfeasor who thereby benefits from a collateral source. It is not for us to rewrite the statute to comport with our judgment of what we may consider to be a wiser course. (Id. at 566, 428 A.2d 1254).
The Legislature responded in 1983 by enacting the current statute N.J.S.A. 39:6A-9.1. This statute makes no mention of a subrogation right as did the prior statute. Instead, it explicitly states that an insurer who makes PIP payments shall have the right to recover the amount of payments from the tortfeasor. The statute provides:
Any insurer ... paying personal injury protection benefits ... as a result of an accident occurring within this State, shall, within two years of filing of the claim, have the right to recover the amount of payments from any tortfeasor.... who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefit coverage, other than for pedestrians ... or although required did not maintain personal injury protection ... at the time of the accident.
In the case of an accident occurring in this State, involving an insured tortfeasor, the determination to whether an insurer health maintenance organization, or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the cost of processing benefits claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration against the insurer of the tortfeasor and shall be by agreement of the involved parties or, upon failing to agree, by arbitration. (emphasis added).
Although there are no New Jersey cases which have interpreted the statute, decisions in other jurisdictions have concluded *385 that an amount an insurer seeks in reimbursement is not limited to the other insurer's limits of liability.
In the case of Ohio Sec. Ins. Co. v. Drury, 582 S.W.2d 64 (Ky. 1979), the court concluded that the Kentucky statute creating a separate right of recovery had no relationship to the tortfeasor's insurance contract. The court said:
Motorist Mutual urges that since it has paid $23,000.00 out of its $25,000.00 limits on bodily injury liability coverage, Equity is entitled to the remaining $2,000.00 and no more, for there is no policy provision from which to pay the additional $8,000.00 Equity is demanding. The answer to that is that, Motorist Mutual, by writing insurance in Kentucky, makes itself amenable to the provisions of the Kentucky Law and necessarily assumes the obligations of ... [the statute] ... notwithstanding the provisions of its contract with Farris. Equity's claim against Motorist Mutual is not entirely one of subrogation, but rather is reimbursement by virtue of the provision of the statute, or by operation of law. (Emphasis added). (Id. at 67-68).
A New York case, Criterion Ins. Co. v. Com. Union Assur. Co., 89 Misc.2d 36, 390 N.Y.S.2d 953 (Sup.Ct. 1976), reached a similar holding. In that case the defendant contended that any interpretation of the New York statute which required it to pay to the plaintiff any sums in excess of its limits of its liability policy impairs the obligations of its contract with its insurer.
The New York No Fault Law provides:
Any insurer liable for the payment of first party benefits to or on behalf of a covered person shall have the right to recover the amount of such benefits so paid from the insurer of any other covered person if and to the extent that such other covered person would have been liable, but for the provisions of this article, to pay damages in an action of law. (Comprehensive Automobile Insurance Act Insurance Law Article 18, Section 674).
The court said:
The statutory mandate, in simple terms, is that Commercial Union having paid first party benefits to its insured, a covered person, has the right to recover the amount of those benefits from Criterion as the insurer of another covered person "if and to the extent that such other covered person would have been liable, but for the provisions of this article [the No Fault Act], to pay damages in an action at law." (Criterion, 390 N.Y.S.2d at 956).
........
The petitioner's argument that this imposes on it a liability which it did not contract to assume is untenable. The object of the No Fault Act was to eliminate the vast majority of auto accident negligence suits from the judicial *386 arena and to assume prompt compensation to accident victims of substantially all of their economic loss without regard to fault ... (citations omitted) . .. In writing insurance in this State, Criterion necessarily assumed the obligations imposed by the statute on those so engaged in that type of business... (Id. at 957).
A United States District Court in Hawaii also came to the same conclusion in State Farm Fire and Cas. v. National Union Fire Ins. 563 F. Supp. 813 (D.Haw. 1983). The court cited the Criterion case and said:
Other jurisdictions have held that provisions for a no-fault reimbursement scheme operate without reference to contractual insurance limits.
Under the New York law, a no-fault insurer may recover from other no-fault insurer "the amount of [first party benefits] paid" based on a fault concept. The court held that the statutory obligation of an insurer to reimburse another insurer is not limited by the underlying limits of the coverage. Rather, the reimbursing insurer assumed the obligation imposed by statute in writing insurance in the state. The New York statute, like the Hawaii No-Fault law, does not refer to insurance policy limits in determining the amount to be reimbursed. (Id. at 814).
It then concluded:
This court finds that the amount to be reimbursed under ... (the Hawaiian statute) ... is not restricted by the policy limits of the insurer of the vehicles ... (Id. at 814-815).
In Kessler v. Weigandt, 68 Or. App. 180, 685 P.2d 425 (1984), the court addressing a similar question concluded:
... direct reimbursement from the negligent driver's liability insurer as provided in ... [the statute] ... follows significantly different procedures, whose differences are not limited to its effect on the liability insurer's policy limits. The injured party plays no role in this method ... The liability insurer's obligation is directly to the PIP insurer and is for the full amount of the PIP paid, reduced in proportion to the injured party's fault rather than to the cost of the recovery. (Kessler, 685 P.2d at 430).
Although there are no New Jersey cases on point, the Law Division case of Buoni v. Browning Ferres Indus., 219 N.J. Super. 96, 529 A.2d 1044 (Law Div. 1987) is helpful. In that case, in which the insurer brought an action directly against the tortfeasor, the court held that a dismissal with prejudice of a prior action by the insured against the tortfeasor did not bar the insurer's action because the action was not one based on subrogation. The court stated:

*387 ... The language of N.J.S.A. 39:6A-9.1 was apparently crafted in response to Aetna. It does not refer to "subrogation," but rather speaks in terms of the direct right of the insurer paying personal injury protection benefits to recover those payments from a tortfeasor who did not carry PIP coverage. The present form of the statute thus confers a primary right of reimbursement on the injured party's insurer and does not make recovery depend upon a claim the insurer acquires by subrogation to the right of its insured. (Id. at 99-100, 529 A.2d 1044).
The defendant relies on the case of Sherman v. Garcia Construction, Inc., 251 N.J. Super. 352, 598 A.2d 242 (App.Div. 1991), as authority for the proposition that reimbursement cannot be had against an insurance company whose policy limits have been exhausted. In that case, the court considered facts and issues similar to this case. The plaintiff was injured while operating a private passenger vehicle which was involved in an accident with a commercial vehicle. The commercial vehicle was insured by Liberty Mutual under a commercial vehicle policy having a liability limit of $300,000.00, which was paid to the plaintiff. Plaintiff's carrier, Traveler's, having paid PIP to the plaintiff, brought an action against the insured, Garcia Construction Inc., not Garcia's insurance company. The court held that the driver-tortfeasor had no personal liability for reimbursement of PIP benefits paid by Liberty Mutual. In doing so, the court appeared to take for granted the fact that Liberty Mutual Insurance Company was not required to make payments over and above the limits of its policy. The court stated:
Although Travelers does not claim that under N.J.S.A. 39:6A-9.1 Liberty Mutual can be held for reimbursement of PIP benefits beyond the $300,000.00 limits of liability insurance, it seeks to hold the individual defendants personally liable for all reimbursement not covered by the policy. (Id. at 355, 598 A.2d 242).
However, the only issue now remaining is whether because the full policy limits have been exhausted, the third party defendants may proceed against Cesar Garcia and Garcia Construction, Inc. personally based upon their alleged individual liability as tortfeasors under the provisions of N.J.S.A. 39:6A-9.1 providing for the reimbursement of PIP benefits.
We hold that an insured commercial vehicle tortfeasor has no personal liability for reimbursement of PIP benefits. (Id. at 354, 598 A.2d 242).
But the Sherman court also stated:

*388 ... any right established by section 9.1 must be limited to the plain language of the legislative provision. The enactment of section 9.1 granted anew a right of reimbursement to PIP providers. That right is primary and not linked to any purported subrogation rights of the beneficiary of the PIP benefits. (Emphasis added). (Id. at 356, 598 A.2d 242).
In addressing the question of whether an insurer would be required to make reimbursement over and above the limits of the liability policy, the legal counsel to the No Fault commission interpreted the prior statute, which was based on subrogation principals, as permitting an insurer to make claim against a tortfeasor's insurer in an amount in excess of the tortfeasor's limits of liability:
Assume that as a result of an automobile accident, a passenger in such automobile is injured. The passenger collects $5000 in personal injury protection benefits from his own insurer. The passenger then sues the host driver who is found to be negligent, and secures an award of $15,000. The host driver is insured with a liability limit of $15,000 for bodily injury sustained by one person. The passenger's insurer, through the subrogation provisions of the Act, has been reimbursed the $5,000 paid to the passenger under the personal injury protection coverage of the passenger. The question which arises is whether the liability limit of $15,000 is reduced to $10,000 as a result of the $5,000 paid to the passenger's insurer through subrogation.
It is the position of this writer that the liability limits should not be reduced by the amount of payments made under the subrogation provisions of the Act ... Personal injury protection coverage is specifically referred to in the Act as "additional coverage" beyond bodily injury liability coverage.
........
The subrogation provisions of the Act should be interpreted to provide that the insurer of a negligent individual will ultimately be responsible for payment of personal injury protection benefits through the subrogation provisions of the Act. In effect, what occurs is that indirectly the insurer of the negligent individual is responsible for the payment of personal injury protection benefits even though the injured claimant would not have been permitted to collect such benefits directly from the insurer of the negligent individual. No Fault and Comparative Negligence in New Jersey, Mario A. Iavicoli, Esq. (1975) (at 118-119).
In the case of Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 536 A.2d 752 (1988), the Court commented on the change in the statute:
In Aetna Ins. Co. v. Gilchrist Bros. Inc., 85 N.J. 550 [428 A.2d 1254] (1981), the Court held that a private PIP carrier could not recover by subrogation from an insured tortfeasor the PIP benefits that the carrier had paid to its insured. The *389 1983 amendments to the "No-Fault" law now seem partially to overrule Aetna v. Gilchrest [Gilchrist,] supra, in that N.J.S.A. 39:6A-9.1 "confers a primary right of reimbursement on the injured party's insurer" against a tortfeasor, like Gilchrest [Gilchrist], who was not required to maintain PIP coverage or against a tortfeasor who failed to carry PIP protection. (Emphasis added). (Id. at 280, 536 A.2d 752).
Considering and comparing the language of the old statute and the current one, as well as their histories, it is this court's opinion that an insurer who pays PIP may seek reimbursement of the amounts paid against the tortfeasor's insurer even where that insurer's liability policy limits have been exhausted.
The words of the statute are plain and not subject to interpretation:
An insurer ... shall have the right to recover the amount of payments from any tortfeasor....
These words are not modified in any way so as to suggest that exhaustion of policy limits bars a claim for reimbursement, as it does for example in the Georgia statute which provides that the statute's right of subrogation is not "deemed to increase or enlarge the bodily injury liability." Ga. Code Ann. § 33-34-3(d)(2).
This court is fully cognizant of the impact this holding will have on commercial vehicles, particularly with regard to the calculation of premiums. Nevertheless, the plain language and history of the statute dictate this result.
Plaintiff's motion is granted.
NOTES
[1] A subrogation claim under the statute may only be made against an insurer. See N.J.S.A. 39:6A-9.1 and Buoni v. Browning Ferres Indus. 219 N.J. Super. 96, 100, 529 A.2d 1044 (Law Div. 1987).