■ AMBER LEE LAMANA, Respondent, v JOSEPH JANKOWSKI, Defendant, and DIAKITE OUSSEINE et al., Appellants. (And Other Actions.) [788 NYS2d 5]—

Judgment, Supreme Court, Bronx County (Albert J. Emanuelli, J.), entered on or about October 7, 2003, which, following a jury verdict in plaintiff's favor, awarded her a total of $600,000 for past and future pain and suffering, plus interest, costs and disbursements, unanimously reversed, on the law, without costs, and the matter remanded for a new trial.

Plaintiff was the front seat passenger in an automobile that collided with a truck driven by defendant Diakite Ousseine and owned by defendant France Croissant, Ltd. Although plaintiff was wearing a seatbelt, she sustained injuries when three airbags deployed upon impact and struck her in the face. Plaintiff was removed from the car by EMS and taken by ambulance to St. Vincent's Hospital. Upon arrival at the hospital, she complained that she was unable to see out of her right eye. She remained in the hospital for 10 days and was treated by various doctors from the ophthalmology and neuro-ophthalmology departments. Doctors confirmed that plaintiff's right pupil was dilated and fixed, and they observed bruising on her upper eyelid and blood in the anterior chamber of the eye.

Plaintiff testified at trial that, since the accident, she can only see shades of grey and black from her right eye. Plaintiff also testified that she has problems with depth perception, and that she often hits her head with doors and cabinets. She also has difficulty driving and walking down steps.

Dr. Medow, an ophthalmologist, testified on plaintiff's behalf.

Dr. Medow examined plaintiff twice, and he related that when asked to read the visual acuity chart with her right eye, plaintiff was unable to do so. However, further examination revealed that plaintiff did have light perception in that eye. Dr. Medow also described a number of other objective tests that he conducted, as a result of which he concluded that plaintiff had several tears in her right papillary sphincter muscle which caused permanent enlargement of the pupil and dense vision loss. A positive result on a test called the swinging flashlight test indicated optic nerve damage. Dr. Medow also found tears in the muscle that closed plaintiff's right pupil, which, he opined, would not heal. He testified that plaintiff suffered a significant limitation of use of a body function or system, in that the vision in the right eye functioned at less than 50%, depriving plaintiff of binocularity. He also opined that plaintiff sustained a permanent consequential limitation of use of a body system or organ because plaintiff will not regain vision in the injured eye.

Dr. Head, a neurologist, testified for the defense. He stated that he examined plaintiff and found that her right pupil was fixed at three millimeters. He also observed that plaintiff's right eye did not respond to light. Dr. Head examined the right eye with a funduscope and found "optic pallor," which he described as "lightness in the eye that should not be there." He diagnosed plaintiff with optic neuropathy of the right eye or damage to the optic nerve. However, after reviewing another doctor's report containing normal results from a "visual evoked response test," Dr. Head changed his diagnosis to "no optic nerve pathway abnormality and no actual loss of vision" in the right eye. He opined that if a person has a fixed dilated pupil but no damage to the optic nerve, her vision would not be impaired. He also suggested that plaintiff's alleged vision loss might have had a "non-organic" component, or may have been feigned.

Dr. Schutz, an ophthalmologist, also testified for the defense. After examining plaintiff and reviewing her hospital records, he diagnosed her with probable traumatic optic neuropathy. He opined that tears and bleeding which he observed in the iris had caused small microscopic ruptures of the sphincter muscle, which is the muscle that closes the pupil. Dr. Schutz found no evidence of any optic nerve injury. He concluded that there was injury to the iris of the eye that caused bleeding in the anterior chamber, but no damage to the lens, vitreous retina or optic nerve. He also opined that the fixed pupil would not have affected plaintiff's vision, which was essentially normal. However, Dr. Schutz stated that plaintiff's fixed right pupil could cause her to experience sensitivity to light or glare.

At the close of evidence, defendants moved for a directed verdict on the ground that plaintiff had not suffered a "serious injury" under Insurance Law § 5102 (d). The trial court denied the motion. Subsequent to summations, during the precharge conference, the court ruled that plaintiff had met the Insurance Law § 5102 threshold as a matter of law, and it determined to submit only the issues of liability and damages to the jury. A verdict was rendered finding that defendants were negligent and that such negligence had been a substantial factor in causing the accident, for which defendants bore 60% responsibility. Plaintiff was awarded $300,000 for her past pain and suffering and $300,000 for future pain and suffering over 50 years. Defendants Diakite Ousseine and France Croissant, Ltd. appeal. We reverse.

Insurance Law article 51, commonly referred to as the "No-Fault Law," provides that in order for a victim of an automobile accident to bring an action for "non-economic loss," i.e., pain and suffering, he or she must demonstrate "serious injury," defined by Insurance Law § 5102 (d) as: "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." Plaintiff's evidence sought to establish that the injury to her right eye fell within either of two categories. She first alleged that she suffered a "significant limitation of use of a body function or system" because her right eye functioned at less than 50%, essentially depriving her of binocularity. Plaintiff alternatively asserted that she has "permanent consequential limitation of use of a body organ or member" based upon the evidence that she will never regain vision in the affected eye. Defendants' evidence contradicted the existence, the degree and the alleged permanency of the injuries.

Given that plaintiff did not move for a directed verdict on the question of whether the threshold showing of serious injury had been met (*see Miller v Miller*, 68 NY2d 871 [1986] [failure to move for directed verdict considered concession of jury issue on serious injury question]), and the conflicting evidence as to plaintiff's injuries adduced at trial, the trial court usurped the

province of the jury in determining that plaintiff had met the Insurance Law § 5102 threshold as a matter of law (see Young v Gould, 298 AD2d 287 [2002]; Noble v Ackerman, 252 AD2d 392, 395 [1998]; Cooper-Fry v Kolket, 245 AD2d 846 [1997]; Reynolds v Burghezi, 227 AD2d 941, 942 [1996] ["(t)he existence of a serious injury is generally a matter for the jury's determination"]). Plaintiff's evidence as to injury to the optic nerve in her right eye was not unimpeached, and conflicting evidence was also presented as to the degree and permanency of the impairment of her vision as a result of the accident. Accordingly, we reverse the judgment appealed and remand the matter for a new trial. Concur—Buckley, P.J., Mazzarelli, Andrias, Marlow and Catterson, JJ.