*861 OPINION OF THE COURT
Fernando Tapia, J.
In these nonpayment of no-fault insurance benefits cases before the Commercial Small Claims Part, this court, after oral testimony and review of submitted cases/statutes from claimant, hereby dismisses these cases without prejudice.
Does the Commercial Small Claims Part have subject matter jurisdiction to try a no-fault case when a specific No-Fault Part exists within New York City Civil Court? This court finds that it does not. Thus, under New York City Civil Court Act § 1805-A,[1] the above-captioned case is transferred to the No-Fault Part for proper adjudication.
I. Factual Background
Claimant is an assignee for an individual patient who sought health care treatment from a motor vehicle accident. Claimant’s representative is not an attorney. On or about December 10, 2009 claimant’s representative appeared before the Commercial Small Claims Part to recover no-fault benefits from defendant Countrywide Insurance, which is represented by counsel.[2]
Claimant seeks $4,365.52 and $5,000 from defendant for unpaid no-fault bills. Defendant argues that the cases should be dismissed for lack of subject matter jurisdiction because claimant became an assignee of the claim that originally belonged to an individual, and not to a commercial entity. Claimant’s representative counters with a First Department Appellate Term case (claimant’s representative relies on East End Med., P.C. v Oxford Health Ins., Inc. [12 Misc 3d 135(A), 2006 NY Slip Op 51229(U) (App Term, 1st Dept 2006)], which will be discussed later) which ruled in favor of the plaintiff, stating that the claim could be heard in the Small Claims Part.
II. The Small Claims Part: Truly a “People’s Court”
A. Brief Discussion on the Small Claims Part
Small claims court is an informal court that is part of Civil Court. (See A Guide to Small Claims Court, Unified Court System; see also Siegel, NY Prac § 581 [4th ed].) As such, there *862 is no requisite motion practice involved. In fact, motion practice is discouraged in small claims. (See Weiner v Tel Aviv Car & Limousine Serv., 141 Misc 2d 339, 341 [Civ Ct, NY County 1988] [where movant sought to dismiss pro se claimant’s case, the Civil Court held that the Small Claims Part need not entertain a pretrial motion, absent extraordinary circumstances].)
Under CCA 1809 (1) (“Procedures relating to corporations, associations, insurers and assignees”),
“[n]o corporation, except a municipal corporation, public benefit corporation, school district or school district public library wholly or partially within the municipal corporate limit, no partnership, or association and no assignee of any small claim shall institute an action or proceeding under this article, nor shall this article apply to any claim or cause of action brought by an insurer in its own name or in the name of its insured whether before or after payment to the insured on the policy” (emphasis added).
The purpose of CCA 1809 (1) is to keep businesses from using the Small Claims Part as claimants. (See Siegel, Supp Practice Commentaries, McKinney’s Cons Laws of NY, CCA 1809, 2010 Electronic Update.) To address whether businesses can use the Small Claims Part, then, CCA 1809-A was enacted by the New York State Legislature. A discussion follows.
B. CCA Article 18-A: Legislative Enactment Governing the Commercial Small Claims Part
1. Legislative History and Intent of Article 18-A
In 1987 the New York Legislature enacted CCA article 18-A, which outlines the jurisdictional parameters for commercial cases in the Small Claims Part.[3]
Under CCA 1809-A (“Procedures relating to corporations, associations, insurers and assignees”), “[a]ny corporation . . . which has its principal office in the city of New York and an assignee of any commercial claim may institute an action or proceeding under this article” (CCA 1809-A [a] [emphasis added]).
Furthermore, under CCA 1801-A (“Commercial claims defined”), “ ‘commercial claim’ . . . shall mean and include any cause of action for money only not in excess of the maximum amount permitted for a small claim in the small claims part of *863 the court . . . provided that . . . the claimant is a corporation, partnership or association.” (CCA 1801-A [a].)[4]
Commercial litigants can therefore initiate suit in the Commercial Small Claims Part. The Unified Court System also has a booklet titled A Guide for the Use of the Commercial Claims Part which is available to the public.
Article 18-A has been criticized for simply paralleling the existing article 18 instead of being an independently distinct rubric for commercial claims being brought to the Small Claims Part. (See Siegel, General Practice Commentary on “Commercial” Small Claims Article, McKinney’s Cons Laws of NY, Book 29A, UCCA 1801-A, at 815-816.) Nevertheless, there are relevant sections germane to the cases at hand that explain why the Commercial Small Claims Part is not the proper venue.
2. Implications of Article 18-A Regarding the Above-Captioned Cases
As mentioned earlier, motion practice is discouraged in small claims. No-fault matters, on the other hand, command motion practice because of their complicated nature.[5] It therefore follows that these two no-fault cases be transferred to the No-Fault Part for proper adjudication in the interest of justice, so that the assignee can be accommodated accordingly.
According to CCA 1802-A (“Parts for the determination of commercial claims established”), the Commercial Small Claims Part “[s]hall not be exclusive of but shall be alternative to the procedure . . . with respect to actions commenced in the court by the service of a summons.” That is, Commercial Small Claims Part is to be used as an alternative forum, not an exclusive one.
In the cases at hand, the most relevant section is CCA 1809-A (“Procedures relating to corporations, associations, insurers and assignees”), which states that no individuals or corporations shall take an assignment of any claim or demand, with the intent and for the purpose of bringing an action or proceeding in the Commercial Small Claims Part (CCA 1809-A [b]). As assignment by an individual to a corporation is neither a small claim nor a commercial claim because it was assigned; neither is it a commercial claim because it was not originally commercial *864 when the assignment was made.[6] This effectively precludes the bringing of a common medical benefits case in the Small Claims Part.
Thus, an assignee may bring a case in the Commercial Small Claims Part, as long as it does not exceed five such suits per month, and as long as its main reason is to have the case tried on its merits, and not as a procedural legal strategy to get a favorable outcome from a forum such as small claims.[7]
Here, claimant relies on East End Med., P.C. v Oxford Health Ins., Inc. (12 Misc 3d 135[A], 2006 NY Slip Op 51229[U]) to put forth its argument that the Commercial Small Claims Part is the proper forum to resolve these cases. In East End Medical, the health care provider (the appellant) sought to recover no-fault insurance benefits from 13 of its patient assignors in this consolidated action. The majority opinion ruled that the appellant’s no-fault case was prematurely dismissed because the merits were not seriously considered. (2006 NY Slip Op 51229[U] at *1.)
It is, however, the cursory sua sponte discussion of subject matter jurisdiction in the dissent that ignites the relevance of East End Medical with respect to the case at hand.[8] According to the dissent, because the claimant’s case was not originally “commercial” as defined pursuant to CCA 1809-A,[9] it could not have been brought in the Commercial Small Claims Part under CCA 1809-A. (2006 NY Slip Op 51229[U] at *2.)
This court, therefore, agrees with the dissent that where there is a more proper forum that specifically addresses claims by *865 health care providers for nonpayment of basic economic loss claims, it is that forum that should be regarded as having subject matter jurisdiction. The proper forum with jurisdiction to entertain the type of claim at issue in the instant matter, however, presupposes the existence of a statute that permits through logical reasoning the creation of a judicial forum to most effectively adjudicate no-fault medical benefits claims.
III. Insurance Law Article 51: New York State Comprehensive Automobile Insurance Reparations Act (Also Known as the No-Fault Law)
The No-Fault Insurance Law was created in 1973 for the express purpose of promoting “prompt resolution of injury claims, limiting] cost to consumers and alleviating] unnecessary burdens on the courts.” (Byrne v Oester Trucking Inc., 386 F Supp 2d 386, 391 [SD NY 2005], citing Pommells v Perez, 4 NY3d 566 [2005].)
At the crux of no-fault insurance litigation is the issue of whether the injured party sustained a “serious injury” as defined by Insurance Law § 5102 (d). This “serious injury” threshold, as defined, “provides that in order for a victim of an automobile accident to bring an action for ‘non-economic loss/ [such as] pain and suffering, he or she must demonstrate ‘serious injury’ [resulting from the accident].” (Lamana v Jankowski, 13 AD3d 134, 136 [1st Dept 2004].)
A determination that the “serious injury” threshold has not been met, however, does not preclude a no-fault claimant from recovering any basic economic loss incurred as a result of a motor vehicle accident (MVA). With a limit of up to $50,000 per person, a claimant can seek to recover for medical services, lost wages, and other reasonable and necessary expenses. It is these types of claims that constitute the overwhelming majority of the No-Fault Part Civil Court case calendar.
In an attempt to handle these claims fairly and expeditiously pursuant to the spirit and letter of the No-Fault Law, a “No-Fault Part” was created in Bronx Civil Court. The No-Fault Part is a specialized court created in Bronx County[10] to handle no-fault basic economic loss claims. This court would have the exclusive authority for entertaining all motions and trials pertaining to these claims.
The No-Fault Part has greatly facilitated the removal of the vast majority of MVA claims from the sphere of common-law *866 tort litigation into a quick, sure and efficient system for obtaining compensation for economic loss suffered from a car accident.[11] The nature of the claims exclusively involves payment demands by health care providers (always represented by counsel), as assignees, for health care services and treatment rendered parties (assignors) involved in MVAs.
Likewise, the defendants are exclusively insurance carriers and also invariably represented by counsel. In addition to representation by counsel, limited discovery is allowed in the No-Fault Part. The daily court calendar is divided such that during the morning calendar call, all procedural and nonprocedural motions are heard and orally argued, if not taken on submission. In the afternoon, all bench trials are conducted.[12] This approach, suffice it to say, has generated a fair, uniform, and expeditious adjudication of an otherwise crushing volume of no-fault cases.
The court’s singular focus on medical benefits claims has allowed judges, attorneys, and court staff to develop the No-Fault Part into an efficient mechanism for the adjudication of these claims. This efficiency is predicated first upon a narrow body of law effectively interpreted and applied by a judge with the sole responsibility of adjudicating medical benefits claims that, secondly, are handled by experienced counsel on a daily basis in an adversarial, but nonconfrontational courtroom setting in the disposition of these claims. The functional structure of the No-Fault Part is consistent, therefore, with one of the No-Fault Law’s goals: the expeditious handling of basic economic loss claims. From a commonsense policy standpoint, the No-Fault *867 Part is the proper forum to bring medical benefits claims actions.
IV. Conclusion
In sum, these two cases at hand are not “commercial” per se, based on CCA 1809 (1), as assignees are barred from initiating suit in the Small Claims Part. Instead, they should be adjudicated in the No-Fault Part. Wherefore these cases are hereby dismissed without prejudice so that they can be transferred to the No-Fault Part, which is the proper forum.

. Pursuant to New York City Civil Court Act § 1805-A (b), “[t]he court shall have power to transfer any commercial claim or claims to any other part of the court upon such terms as the rules may provide, and proceed to hear the same according to the usual practice and procedure applicable to other parts of the court.”

. Peter Coates of Jaffe and Koumourdas appeared on the record.

. This took effect on January 1, 1991.

. The amount is currently $5,000.

. An example of a small claims case is where a store customer sues a furniture store for defective furniture. Such a case does not require motion practice, unlike no-fault cases where expert testimony of health care professionals is generally part of proving a plaintiffs case as to the medical necessity of a treatment or service.

. Dunrite Auto Body & Motors v Liberty Mut. Ins. Co., 160 Misc 2d 168, 171 (Suffolk Dist Ct 1993); see also Arthur F. Engoron, Small Claims Manual: A Guide to Small Claims Litigation in the New York State Courts, at 35 (5th ed 2001).

. To start a commercial claims case, the commercial claimant must give a statement to the commercial claims court clerk as to why she/he is starting a lawsuit. The claimant must also pay a $20 filing fee to the clerk, plus the cost of mailing the notice of the lawsuit to the defendant. The claimant must also file a verification that no more than five commercial claims have been initiated by that claimant anywhere in New York State during a calendar month. (See A Guide for the Use of the Commercial Claims Part, at 2 [1996].)

. In East End Medical, subject matter jurisdiction was neither raised nor briefed by the party on appeal. The Appellate Term therefore broached the issue on its own.

. “Commercial” means any corporation, partnership, or association with its principal office in New York State can initiate suit in the Commercial Small Claims Part, so long as the entity is not a collection agency or entity that take assignments of debts. (See CCA 1809-A; see also A Guide for the Use of the Commercial Claims Part, at 1 n 1 [1996].)

. Both Brooklyn and Queens Civil Court have created a similar No-Fault Part to accommodate such cases.

. The purpose of no-fault auto insurance is to encourage expeditious resolution of claims without the necessity of imposing an additional burden on courts. (See Matter of Gretka [General Acc. Group], 100 Misc 2d 170 [Sup Ct, Erie County 1979].)
Benefits to be paid on a “no-fault” basis were adopted by the New York State Legislature as a means of reducing the caseload of the courts and to provide a fair and adequate way of recovering for those injured in auto accidents. (See Gamble v Randolph, 91 Misc 2d 436 [Rochester City Ct 1977].)
The object of Insurance Law of 1939 § 670 et seq. was to assure prompt compensation to accident victims of substantially all of their economic loss without regard to fault. (See Matter of Criterion Ins. Co. of Wash., D.C. [Commercial Union Assur. Co.], 89 Misc 2d 36 [Sup Ct, Nassau County 1976].) This same tenet is echoed in the current No-Fault Law, along with Ohio Cas. Ins. Co. v Continental Ins. Co. (101 Misc 2d 452 [Sup Ct, Erie County 1979]).

. Although nonjury trials are officially held during the morning calendar call and motions during the afternoon calendar call, most motions are able to be resolved in the mornings as well. If not, then they are resolved in the afternoon calendar.